PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ CARDONA *(a)* DON PEPITO, Defendant and Appellant.

No. 5646.   Argued December 20, 1935.—Decided May 29, 1936.

*C. Iriarte, F. Fernández Cuyar, Héctor González Blanes* and *James R. Beverley* for appellant.   *R. A. Gómez* and *Luis Janer,* Prosecuting *Attorneys,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

José Cardona Serrano *(a)* Don Pepito was convicted of second degree murder in having shot and killed Juan Cosme. The appellant assigns various errors with respect to the instructions, but no specific exceptions were taken thereto in the court below.   Indeed, before resuming the facts the court drew attention that one of the attorneys for the defendant was compelled to be absent from the court room while the instructions were being given.

Partly from the instructions and more particularly from the record the facts tending to support the case of the government were that the defendant on the 11th of June, 1933, was a forester *(guardabosque)* in charge of certain lands or swamps belonging to the People of Puerto Rico and located in Santurce.   A number of people have settled in this region. We may say, parenthetically, whether the house that the deceased was occupying belonged or not to the government might have had some bearing on the case if the testimony of the defendant was to be followed.   On the day of the shooting Juan Cosme came up to the defendant and said to him: "'If you want to draw attention to anything tell it to me and not to my wife.''   Thereupon the defendant said that he was as much of a man as anybody else and that he had told this to the deceased's wife and he would tell it again to him, and on saying this he gave the deceased a blow on his face.   Then the defendant pulled out his revolver and said to the deceased: "You are arrested, come along.''   The deceased said that he was not disposed to be arrested and if the defendant wanted him to go along he would have to

kill him first. The defendant then fired a shot which wounded Cosme and then insisted that the deceased should go with him under arrest, but Cosme refused to move from the spot insisting that the defendant would have to kill him. The defendant shot again wounding Cosme in his stomach and the latter died from the effects thereof. There was evidence tending to show also that after the shot the defendant continued to flourish the revolver. Evidently a search was made and no weapon of any kind was found upon the deceased.

The government put María Paz on the stand, the alleged wife of the deceased, with whom he lived. Her evidence tended to show that Cardona had made love to her and that she rejected his advance. The court makes the comment that this evidence was not presented in any way to bolster up the facts on the day of the shooting but merely to show the motive of the defendant.

The theory of the defense was that a day or two before the shooting the defendant went to the house of Juan Cosme to find out about certain shots that he had heard that day or the day before; that by reason of this investigation some words passed between the wife of Cosme and the defendant, to such an extent that the said wife told the defendant that he had better speak with her husband as he was a man and could answer him. The fact was, according to the defendant, that while he was talking to two of the witnesses, who appeared at the trial, Cosme arrived, and laying his hand on the shoulder of the defendant, said that he wanted to talk to him and did this angrily and aggressively. The defendant then asked him what he wanted and the deceased said that if he had anything to say he should say it to him, that the defendant tried to calm him but the deceased put his hand to his back pocket and the defendant then fired a shot that did no harm and immediately fired the second shot which caused the death of Cosme.

As happens with frequency the appellant nowhere in his brief set forth the facts of the shooting or even the theory of self-defense. We think in this case the *Fiscal* might have done so but, of course, the duty upon him is not so strong.

■ The assignments of error with regard to the instructions are specifically answered by the *Fiscal* in his brief. These were:

"3. The Court committed manifest error in its instructions to the jury, in repeating and connecting the theory of the prosecuting attorney with the summary which it forthwith made of the evidence of the government, thereby confusing the jury and leading it to believe that the prosecuting attorney had duly proved his theory of the case.

"4. The Court committed manifest error in its instructions to the jury, in that it referred to facts as to which no evidence had been introduced.

"5. The Court committed manifest error in charging the jury in the sense that if a man is attacked with an object which any reasonable person may think will necessarily cause death, and such death is caused, in the absence of premeditation and deliberation, that circumstance alone is sufficient to characterize the offense as murder in the second degree.

"6. The Court committed manifest error in its instructions to the jury by reason of the uncertain, inexact, and confusing manner in which it treated the questions of law relating to the difference between the crime of murder and that of manslaughter.

"7. The Court committed manifest error, in that in instructing the jury upon the law it commented as to when, in the course of a criminal proceeding, the burden of proof rests upon the defendant.

"8. The Court committed manifest error in its instructions to the jury as to the manner in which the jury should weigh the testimony of witnesses who have testified falsely, such instructions being insufficient.

"9. The Court committed manifest error in its instructions to the jury by reason of the despective form and manner in which it considered the issue of self-defense raised by the defendant.

"10. The Court committed manifest error in instructing the jury that 'contrary to the other penal theory according to which the accused is presumed to be innocent and his guilt must be proved beyond a reasonable doubt, when self-defense or any other defense

justifying the homicide is involved, the burden of proof is on the defendant.'

"11. The Court committed manifest error in its instructions to the jury in stating its opinion and conclusion as to the belief that the defendant might have entertained in regard to the degree of danger in which he found himself.

"12. Th Court committed manifest error in instructing the jury in reference to the meaning and legal concept of 'provocation.'

"13. The Court committed manifest error in failing to include in the summary of the evidence which it made as a part of its instructions to the jury some mention of the evidence tending to show a sudden quarrel or heat of passion.

"14. The court committed manifest error in not taking into consideration, in its instructions to the jury, most important evidence introduced by the defense and on which the defendant based his theory of the case.

"15. The Court committed manifest error in emphasizing those rules and provisions of law which might prejudice the accused while suppressing or treating lightly those which might benefit him."

None of the alleged errors were brought to the attention of the court and we are not convinced that any of them was fundamental. We shall follow the jurisprudence set forth in the following cases: *People* v. *Maldonado,* 45 P.R.R. 405; *People* v. *Mercado,* 46 P.R.R. 147; *People* v. *Nieves,* 48 P.R.R. 149; *People* v. *Hernández,* 49 P.R.R. ____. The judge should always be given an opportunity to correct errors.

█ The most important matter which has caused us some doubt is the attack on the jurisdiction of the court. After the jury was sworn the defendant asked leave to withdraw his plea of not guilty and to be allowed to object to the jurisdiction on the ground that he was a public officer and hence that the prosecution should have been begun by indictment after action by a Grand Jury. The district attorney immediately said that the question was raised too late and further on in the discussion said and insisted that the actions of Cardona did not arise from his duties as forester but from a personal question. The principal insistence in the

court below and here is that the defendant was not a public officer.

We are satisfied that a policeman is a public officer. *Harris* v. *Major,* 153 A. 891 and cases cited. There the defendant was a park policeman.

The court below held that the defendant was not a public officer. Various things were discussed but the principal point was that he was rather an employee than an officer. We may question whether Cardona was in point of fact a public officer. There was no evidence tending to show that he had the authority to carry a weapon other than from the right a watchman might have to protect the property of his principal.

█ Now, although the matter has not been discussed in the brief, we are inclined to agree with the district attorney that if the evidence of the government was to be believed, the defendant shot, not in the performance of any duty imposed upon him by the law or by his employer, but because of a personal motive. The court and the jury had a right to believe that he was unduly using his supposed authority to arrest and making out a case of resistance to authority by Cosme. Indeed, a policeman would not be in the line of his duties if he attempted to make an arrest under similar circumstances. The supposed offense, if any, was a misdemeanor and defendant had no warrant. No man is entitled to shoot and kill merely because of a verbal resistance to supposed authority and therefore, the court and the jury had a right to believe from the evidence that Cardona was not acting in the line of his duties. This matter was left to the court and no attempt was made to obtain any instruction thereon.

█ We likewise agree with the suggestion of the district attorney that the defendant waived his right to challenge the jurisdiction of the court. We find no jurisprudence on the matter probably because in states like California the Government has an option either to proceed by indictment or

information where a felony is concerned and in the rest of the United States either the statute requires prosecution by presentment by a Grand Jury or this is the common law. In the North the matter depends upon the local or federal constitution, the particular provision of which has been held not to apply to Puerto Rico in *People* v. *Muratti,* 245 U.S. 639, and *People* v. *Balzac,* 258 U.S. 298.

Up to the date of the Act of 1919, all prosecutions for felonies were begun by the information drawn up by the district attorney. In 1919 an Act was passed requiring the presentment by Grand Jury in all felony cases. In 1925, however, the following act was passed:

" [No. 98]

"To Amend Section 1 of 'An Act Establishing the Grand Jury and Regulating the Proceedings, Powers, and Duties Thereof, Determining the Form of Indictments by the Grand Jury, the Presentation and Reading of the Same, and the Proceedings Subsequent to the Presentation'; Approved June 18, 1919.

"*Be it enacted by the Legislature of Porto Rico:*

"Section 1.—That section 1 of Act No. 58 of June 18, 1919, entitled 'An Act establishing the Grand Jury and regulating the proceeding thereof, determining the form of indictments by the Grand Jury, the presentation and reading of the same, and the proceedings subsequent to the presentation', are hereby amended so as to read as follows:

" 'Section 1.—Any felony charged against a public officer by reason of acts done by him in the performance of his duties, shall be prosecuted by indictment of the Grand Jury filed in the court having jurisdiction in the case.

" 'All other crimes shall be prosecuted as determined by the Code of Criminal Procedure.'

"Section 2.—All laws or parts of laws in conflict herewith are hereby repealed.

"Section 3.—This Act shall take effect ninety days after its approval.

"*Approved, August 28, 1925.*"

So that since that day prosecutions are always begun by information barring the exception contained in the above Act.

Frequently a waiver may take place where the line of demarcation is not clearly defined. In other words, where a line is attempted to be drawn and a case may fall easily on one side or the other the party interested in maintaining a particular position may more readily waive the matter. This has a double aspect. In the first place, it was doubtful whether the defendant was or was not a public officer; in the second place, the demarcation between an indictment and an information is not so sharply drawn in Puerto Rico, where we have no constitutional limitation on the power of a district attorney to proceed by information rather than by indictment. What is the principal idea of an indictment? It is to give the fellow-citizens of a defendant an opportunity to refuse to prosecute. A district attorney, on the facts before us, may perhaps have mistakenly believed, we think, either that the defendant was not a public officer or that he was not acting in the line of his duties and decide not to present the matter before a Grand Jury. Then, when the case was presented in the district court it would become the duty of the defendant promptly to object and not wait until the jury was impanelled and the witnesses summoned.

█ The defendant seriously objected to María Paz taking the stand to give evidence in the case. We agree with the court and the *Fiscal* that this was pertinent to show a motive for the crime.

The judgment should be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.

### ON MOTION FOR RECONSIDERATION.

█ This was a case where, following the evidence developed by the Government, it would have been difficult to believe that the defendant would have shot Cosme merely

because he resisted arrest or told Cardona that if Cardona had anything to say he should say it to him. Normally it does not seem possible or likely that a man would shoot another under circumstances so relatively trivial. Therefore, the *Fiscal* felt compelled to show that there was a deeper motive lurking in the brain of Cardona. We are quite agreed with the citations from Wigmore's Code of Evidence (2nd ed.) rule 179, referred to us by the defendant, that evidence not very relevant or material to the facts in issue should not be admitted where its almost inevitable result or its likelihood is to inflame the jurymen or arouse their passions. In our main opinion we simply said that this kind of evidence was admissible to prove the motive. Of course, proof of motive may be omitted. Here it became very important for the reasons that we have recited. The real purpose of the introduction of this evidence was not to inflame the minds of the jury, but to give a further demonstration or probability of a malignant heart. The *Fiscal* disclaimed any intention to prove the main facts of his case with the declaration of María Paz, the alleged wife of the deceased. Nevertheless, as the appellant had pleaded self-defense, the jury, partially from the proof of the motive, had a right to disbelieve such a theory. If, as authorities hold, evidence is admissible to show motive, it was in this case.

In an early part of our main opinion we inadvertently, in resuming the evidence of the Government, said that the first shot of the defendant wounded Còsme. We do not know how this error crept in because we clearly had the idea, and still have, that the first shot did no harm. Whether or not the recital was correct could play no great role in the case, especially as it is conceded that after firing the first shot the defendant immediately fired again.

The appellant says that counsel for the defendant, compelled to leave the courtroom before the charge, had asked the court to note a general exception to the instructions and the court did so. We can not see how, physically, an error

may be excepted to before it is committed. An error happens at the trial of a case, the defendant draws the attention of the court to it, and upon adverse action by the court, the defendant excepts. The attention of the court to any possible error was not drawn in this case. On absenting himself voluntarily from the courtroom, without any petition for a postponement, the counsel for the defendant took his chances that the instructions might be incorrect. It was the duty of counsel to be present when the instructions were given or to take his chances, as we have said. We apprehend, and so hold, that no judge can change the law in this respect and allow exceptions to be entered in the record before he has an opportunity to correct a holding. Furthermore, instructions are not a mode of incorporating the evidence or the other proceedings in court and we have searched the record to find any reference to the fact that counsel for defendant, on retiring, asked, by anticipation, that an exception be noted to something that had not happened.

Suppose counsel had absented himself before evidence in rebuttal was finished and asked the court to note an exception to the admission of all the evidence of the Government? Could such an exception avail him? The case is not dissimilar.

The district attorney had no opportunity to be heard in support of the correctness of the instructions objected to, or himself to suggest a reform on error pointed out. We do not see that the case is distinguished from the jurisprudence that requires the appellant to give the court an opportunity to correct or that errors raised and exceptions taken should be specific.

The defendant, we think, under any view of the case, would be in a worse position than if at the end of the instructions he had just excepted to them generally. Why should counsel who leave the courtroom and except generally be in any better position than those who remain and so except?

The motion for reconsideration will be denied.